UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YOAV GUTMAN, individually and on behalf of all others similarly situated,

                     Plaintiff,

v.

LIZHI INC., JINNAN LAI, NING DING, ZELONG LI, XI CHEN, TAO HUANG, YE YUAN, RICHARD ARTHUR, COLLEN A. DEVRIES, CITIGROUP GLOBAL MARKETS INC., HAITONG INTERNATIONAL SECURITIES LIMITED, AMTD GLOBAL MARKETS LIMITED, NEEDHAM & COMPANY, LLC, TIGER BROKERS (NZ) LIMITED, CHINA MERCHANTS SECURITIES (HK) CO., LIMITED, VALUABLE CAPITAL LIMITED, PRIME NUMBER CAPITAL LLC, and COGENCY GLOBAL INC.,

                     Defendants.

**MEMORANDUM AND ORDER**

21-CV-317 (LDH) (PK)

---

LaSHANN DeARCY HALL, United States District Judge:

Yoav Gutman ("Plaintiff"), individually and on behalf of all others similar situated, brings suit against Lizhi Inc., Jinnan Lai, Ning Ding, Zelong Li, Xi Chen (together, "Lizhi Defendants"); Richard Arthur, Colleen A. Devries, Cogency Global Inc. (together, "Cogency Defendants"); Citigroup Global Markets Inc., Needham & Company, LLC, Tiger Brokers (NZ) Limited, China Merchants Securities (HK) Co., Limited, Valuable Capital Limited, Prime Number Capital LLC (together, "Underwriter Defendants"); AMTD Global Markets Limited ("AMTD"), Haitong International Securities Company Limited, Tao Huang, and Ye Yuan[1] (collectively with the Lizhi Defendants, Cogency Defendants, Underwriter Defendants, and

---

[1] Plaintiff never effected service on Ye Yuan.

AMTD, "Defendants"), alleging violations of Sections 11 and 15 of the Securities Act 15 U.S.C. §§ 77k, 77o(a). Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the amended complaint in its entirety.

## BACKGROUND[2]

Lizhi operates a social audio platform for user-generated content in China. (First Am. Compl. ("FAC") ¶ 13.) On August 6, 2019, Lizhi filed a confidential draft registration statement on Form F-1 with the SEC that in turn provided comments emphasizing the importance of compliance with SEC Regulation S-K, 17 C.F.R. § 229.303 ("Item 303") and SEC Regulation S-K, 17 C.F.R § 229.105 ("Item 105"). (*Id.* ¶ 87, 97, 99.) Following amendments, the registration statement was declared effective on January 16, 2020 (the "Registration Statement") (*id.* ¶ 88), and on January 17, 2020, Lizhi filed a prospectus for an initial public offering ("IPO") on Form 424B4, which incorporated and formed part of the Registration Statement (the "Prospectus" and with the Registration Statement, the "Registration Statement"), (*id.*) Lizhi sold more than 4.1 million Lizhi American Depository Shares ("ADS") at $11.00 per ADS, which generated $45 million in gross offering proceeds. (*Id.* ¶ 89.)

Plaintiff claims that the Registration Statement was negligently prepared because it omitted facts concerning the COVID-19 pandemic and "Lizhi's direct and escalating exposure" to it. (*Id.* ¶¶ 90, 91.) The Registration Statement contained the following warning:

> We may be subject to social and natural catastrophic events that are beyond our control, such as natural disasters, health epidemics, riots, political and military upheavals and other outbreaks in the country or region where we have our operations or where a portion of our users or podcasts are located. Such events could significantly disrupt our operations and negatively impact our business, financial conditions and development.

---

[2] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order.

2

(*Id*. ¶ 91.)  Lizhi did not disclose, however, that the COVID-19 epidemic was "already ravaging China, the home base, principal market, and significant hub for Lizhi, its employees and its customers"; "the complications associated with the COVID-19 epidemic were already negatively affecting Lizhi's business, as employees and customers contracted the virus, lost employment, or otherwise experienced difficulty in generating, publishing, and monetizing the content critical to Lizhi's platform"; and "even prior to the IPO, Lizhi employees and customers complained of, and to, Lizhi, which harmed Lizhi's reputation and financial condition and prospects."  (*Id*. ¶ 92.)

The FAC contains a timeline, based on publicly available documents, detailing COVID-19's escalation, and China's and the world's escalating response, up to the IPO.  (*Id*. ¶¶ 45–86.)  The FAC alleges that as of December 31, 2019, 27 cases were identified in Wuhan, albeit as viral pneumonia (*id.* ¶ 47), and that number increased to 44 as of January 3, 2020 (*id.* ¶ 54).  On January 3, 2020 Chinese officials reported the information to the World Health Organization (*id.* ¶ 55), and, on January 4, 2020, Hong Kong implemented the Preparedness and Response Plan for Novel Infectious Disease of Public Health Significance, activating "the second highest" out of three response levels (*id*. ¶ 57).  On January 6, 2020, "China CDC activated the second level public health emergency response (*id.* ¶ 61), and on January 7, 2020, China's president Xi Jinping "demanded Chinese officials to take measures to control and prevent the spread" of COVID-19, (*id.* ¶ 64.)  On January 10, 2020, China began stationing personnel at airports and train stations "across [Wuhan]"[3] to administer fever checks (*id*. ¶ 73), and on January 12, 2020, after the virus had been identified as COVID-19, "Wuhan mandates required

---

[3] The AC is vague as to which region, but the preceding paragraph refers to "flights arriving in Wuhan," so the Court presumes that is the region to which the AC refers.

local businesses . . . to close and halt operations[,]" (*id.* ¶¶ 75-77.) By January 14, 2020, China installed infrared thermometers in airports, railway stations, long-distance bus stations, and ferry terminals, and Wuhan began to control travel. (*Id.* ¶ 79.) On January 15, China CDC activated Level I health emergency response, which is "the highest-level public health emergency response that is activated only when an extraordinarily severe public health emergency occurs in China[.]" (*Id.* ¶ 80.) The FAC alleges other countries responses to the outbreak as well, and press coverage, including press based in the United States.

Based on the timeline, the FAC alleges that "[b]y the time of the IPO . . . businesses operating in China, like Lizhi, were uniquely situated to recognize the then-existing impact the coronavirus was having on their business and operations, and the serious, foreseeable threat the coronavirus continued to pose to their future financial condition and operations." (*Id.* ¶ 85.) Indeed, "Wuhan Lizhi Network Technology Co., Ltd., one of the four main subsidiaries of Lizhi's [variable interest entities], is located in Wuhan" and "[i]ts employees had firsthand direct knowledge of the emergency measures that China took to prevent the spread of [COVID-19] within Wuhan." (*Id.* ¶ 94.)

On March 12, 2020, Lizhi filed a Form 6-K report ("Form 6-K Report) that stated, in relevant part:

> Recently, there was a novel coronavirus outbreak in China, known as COVID-19, which soon spread throughout China and in certain other countries. The COVID-19 outbreak has brought uncertainties and interruptions to China's macroeconomics and may have adverse effects on our operations. The Chinese government has taken various measures to constrain the outbreak. This COVID-19 outbreak has caused and may continue to cause, companies in China, including us, to implement temporary adjustment of work schemes allowing employees to work from home. LIZHI prioritizes the health and safety of its employees, and has taken various preventative and quarantine measures across the Company

4

> soon after the outbreak. As a result of the COVID-19 outbreak, our normal work schedule and results of operations may be adversely impacted, and our revenues for this period may be difficult to predict. With offline activities in China largely limited since early 2020 and many communities subject to temporary lockdown, travel restriction or other form of quarantine . . . . The extent to which COVID-19 impacts our results will depend on future developments, which are highly uncertain and cannot be predicted, including new information which may emerge concerning the severity of COVID-19 and the actions to contain or treat its impact, among others.

(*Id.* ¶ 104.) After filing the Form 6-K Report, Lizhi ADSs fell from the previous closing price of $8.80 per ADS to $6.15 per ADS. (*Id.* ¶ 105.)

On April 20, 2020, Lizhi filed a Form 20-F annual report, which stated in relevant part:

> In late 2019, COVID-19, a novel strain of coronavirus, has spread worldwide. The COVID-19 outbreak has brought uncertainties and interruptions to China's macroeconomics and the global economy and may adversely affect our business and financial performance in 2020
> \*       \*       \*
> We face risks related to the outbreak of COVID-19.
> As a result of the COVID-19 outbreak, our normal work schedule and results of operations may be adversely impacted, and our revenues for this period may be difficult to predict . . . In addition, the disposable income of certain of our users may decrease or have decreased as a result of the impact of the COVID-19 outbreak, which may also adversely affect our performance. The extent to which COVID-19 impacts our results will depend on future developments, which are highly uncertain and cannot be predicted, including new information which may emerge concerning the severity of COVID-19 and the actions to contain or treat its impact, among others.
> \*       \*       \*
> [I]f the impact of the COVID-19 and volatility in the financial markets continue, our financing activities in future to raise additional capital may be materially and adversely affected. . . . Any of these factors may result in large and sudden changes in the volume and price at which our ADSs will trade. In particular, since the COVID-19 outbreaks, concerns over the economic slowdown resulting from the COVID-19 outbreak have led to a significant decrease in the major indices of the U.S. capital markets and an increase in the market volatility, which have, and may continue to have, adversely affected the market price of our ADSs.

5

(*Id.* ¶ 106.) Lizhi's ADSs fell an additional 6.12 percent, closing at $4.91 per ADS, after this disclosure. Plaintiff alleges that this disclosure, and the Form 6-K Report constitute admissions that Lizhi "had already been impacted by the COVID-19 pandemic" prior to the IPO, which necessitated disclosure in the Registration Statement. (*Id.* ¶ 104, 106.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

Defendants argue that Plaintiff's Section 11 claim should be dismissed because the Registration Statement became effective before the risks of COVID-19 became known to them. Defendants argue further that because Plaintiff has failed to plead a Section 11 violation, he necessarily cannot make out a Section 15 violation, and therefore the FAC must be dismissed in its entirety. The Court agrees.[4]

---

[4] As a threshold matter, Defendants argue that Plaintiff lacks standing to assert a Section 11 claim because he has not pleaded facts sufficient to establish injury traceable to the allegedly violative Registration Statement. Plaintiff

I. **Section 11 of the Securities Act**

"Section 11 of the Securities Act prohibits materially misleading statements or omissions in registration statements filed with the SEC." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). Critically, for Section 11 claims based on omissions, plaintiffs must demonstrate that the "allegedly omitted facts both existed, and were known or knowable, at the time of the offering." *Lin v. Interactive Brokers Grp., Inc.*, 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008). Plaintiffs must further establish that the defendant had a "legal obligation to disclose the allegedly omitted information." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 272 F. Supp. 2d 243, 248 (S.D.N.Y. 2003). This is true "even if the information would have been material." *In re Morgan Stanley Tech. Fund Sec. Litig.*, 643 F. Supp. 2d 366, 375 (S.D.N.Y. 2009), *aff'd sub nom. In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010).

Statutes and regulations can provide the basis for a duty to disclose. *Id*. Here, Plaintiffs principally rely on Items 303 and 105 of Regulation S-K. Item 303 requires issuers to "[d]escribe any *known trends* or *uncertainties* that have had or that the registrant reasonably

---

does not oppose this argument. Instead, oddly, Plaintiff's counsel proposes replacing Plaintiff with a new plaintiff who supposedly purchased ADS at the IPO. Setting Plaintiff's odd strategy aside, the Court holds that Plaintiff has standing. Contrary to Defendants' contention, courts in this circuit have found, as recently as this year, Section 11 standing even where a plaintiff did not plead traceability. *See Thomas v. Citigroup Glob. Mkts. Holdings Inc.*, No. 21-cv-3673, 2022 WL 1051158, at *10 (S.D.N.Y. Mar. 1, 2022) ("Although this Court agrees with CGMHI that, in his Complaint, Plaintiff has not stated, in so many words, that his ETN purchases were traceable to the offering made pursuant [the violative statute], his Complaint repeatedly references (and quotes) the Pricing Supplement, and, more specifically, alleges that Plaintiff relied to his detriment on the Pricing Supplement's description of the ETNs . . . 'as advertised.'"). And, at least one court in this circuit has rejected Defendants' argument that "more specific pleading is required" because "'modern market conditions' make tracing particularly difficult in 'a world in which the "shares" purchased by a stockholder might be merely electronic entries in a brokerage firms' books.'" *In re Pareteum Secs. Litig.*, No. 19-cv-9767, 2021 WL 3540779, at *20 n.6 (S.D.N.Y. Aug. 11, 2021) (finding plaintiff's allegations that he purchased shares "pursuant or otherwise traceable to" violative registration statement sufficient on motion to dismiss). The Court notes, however, that it is odd that Plaintiff did not defend standing, opting instead to be replaced with another plaintiff. It is likewise odd that Plaintiff's complaint alleges he was harmed by omissions concerning the COVID-19 pandemic even though he purchased Defendants' ADS nine months after the United States went into lockdown to prevent the virus's spread. Notably, Plaintiff filed suit one month after he purchased ADS. In any event, it remains plausible that Plaintiff purchased ADS from the IPO, and he has standing at this juncture.

expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." *Panther Partners, Inc. v. Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 698–99 (S.D.N.Y. 2008) (citing 17 C.F.R. § 229.303(a)(3)(ii)) (emphasis in original). "Disclosure is required where the trend is both (1) known to management and (2) reasonably likely to have material effects on the registrant's financial condition or results of operations." *In re Proshares Tr. II Secs. Litig.*, No. 19-cv-0886, 2020 WL 71007, at *9 (S.D.N.Y. Jan. 3, 2020), *aff'd*, 839 F. App'x 649 (2d Cir. 2021). Critically, a plaintiff must establish "actual knowledge of the relevant trend or uncertainty[,]" and that the defendant failed to "disclose the manner in which that then-known trend, event, or uncertainty might reasonably be expected to materially impact" its operations and revenues *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95–96 (2d Cir. 2016) (citations and alterations omitted).

     Against this backdrop, the Court cannot find that Plaintiff alleged any omission the disclosure of which was required under Item 303. The reason is plain: COVID-19 was not a known trend at the time of the January 17, 2020 IPO. Plaintiff alleges that at the time of the IPO, COVID-19 was "already ravaging China, the home base, principal market, and significant hub for Lizhi, its employees and its customers." (FAC ¶ 92.) But, as one court recently found, by January 17, 2020, no "human-to-human transmission had been confirmed[,]" and "health officials had identified 41 cases of viral infection—a statistic that 'appeared unremarkable at the time.'" *Wandel v. Gao et al.*, No. 20-cv-3259, 2022 WL 768975, at *2, *7 (S.D.N.Y. Mar. 14, 2022) (quoting *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 49 (2d Cir. 2016)). Indeed, Plaintiff's own sources reveal that as of January 14, 2020, "the disease [was] only spreading in Wuhan." (Ex. H, Phillip Kim Decl. ("Kim Decl.") at 2, ECF No.49-9.) Thus, "the risk of

8

COVID-19 was neither known nor knowable by the start of the IPO," *Wandel*, 2022 WL 76895, at *7, and certainly could not be called a trend by that date.

Plaintiff directs the Court to *Litwin v. Blackstone Group, L.P.* But, that case only confirms the Court's conclusion. There, the Second Circuit rejected defendants' argument that Plaintiff failed to adequately plead a known trend that was material to defendants' business. *See Litwin*, 634 F.3d 708, 716 (2011). The alleged trend was the increase in subprime mortgage defaults, which undoubtedly existed and was known to defendants by March 10, 2008, the IPO date, because the rate of defaults began to increase in early 2005, and "top mortgage lenders with sub-prime mortgage exposure began revealing large losses and warned of future market losses" in early 2007. *Id*. at 710–11. Here, by contrast, there were relatively few infections and they were all confined to Wuhan. And, there is no allegation that Defendants knew that COVID-19 would have a material impact on Lizhi's operations and revenue. Plaintiff also cites *In re Facebook, Inc. IPO Securities & Derivative Litigation*, but there too, there was an existing trend that was already having a material impact on Facebook's business. *See* 986 F. Supp. 2d 487, 508–17 (S.D.N.Y. 2013) (Section 11 violated where "Facebook did not discuss whether revenue from use of Facebook on personal computers or other Company product decisions could offset the loss caused by the increase in mobile usage" even though mobile usage was already negatively affecting revenue growth).[5]

Not only has Plaintiff failed to plausibly plead that COVID-19 was a trend as of January 17, 2020, he also failed to plausibly plead that Defendants had actual knowledge that COVID-19

---

[5] Plaintiff argues that Defendants were required by Item 303 to disclose the "future impacts of foreign governmental policies" (Pl's Mem. at 22). But the FAC fails to establish that any government response in China was a "pertinent . . . economic, fiscal, monetary, or political polic[y]" *see* 17 C.F.R. § 229.303, or that Defendants had actual knowledge that the response in China "could materially affect . . . its operations or investments by United States nationals," *id*. In other words, again, Plaintiff fails to plead that Defendants knew the COVID-19 preventative responses would materially impact Lizhi's operations or revenues.

9

would have a material impact on Lizhi's operations or revenue. The FAC contains no allegations demonstrating that Defendants knew before the IPO that COVID-19 or China's response was having, or would have, a material impact on its sales, revenue, or income. *See Medina*, 640 F. App'x at 48–49 (2d Cir. 2016) (affirming dismissal of complaint where plaintiffs' proposed second amended complaint contained "no assertions of defendants' actual knowledge" of the alleged trends). To be sure, the AC contains allegations concerning COVID-19's impact on Lizhi, but they lack the specificity necessary to make them appear plausible. Plaintiff alleges: (1) that Defendants omitted that "the complications associated with the COVID-19 epidemic were already negatively affecting Lizhi's business, as employees and customers contracted the virus, lost employment, or otherwise experienced difficulty in generating, publishing, and monetizing the content critical to Lizhi's platform" (Am. Compl. ¶ 92); and (2) that "Lizhi employees and customers complained of, and to Lizhi," resulting in harm to Lizhi's "reputation and financial conditions and prospects" (*Id.*) Plaintiff says nothing more. Indeed, conspicuously absent from the FAC are any specific allegations concerning the material impact on Lizhi's revenue and operations. *See Jones v. Party City Holdco, Inc.*, 230 F. Supp.3d 185, 191 (S.D.N.Y. 2017) (no Section 11 violation where "plaintiffs offer no facts from which the Court plausibly could infer" the alleged misstatement was material to defendant's business). At the time of the IPO, COVID-19 was in its nascent stages, and the FAC lacks any allegations establishing that Defendants had reason to know it would become a global pandemic.

Nevertheless, Plaintiff argues that "[g]iven Defendants' general admission of the materiality of health epidemics' impact on Lizhi's business . . . Defendant should reasonably expect, specifically, that the Covid epidemic would be likely to materially impact Lizhi." (Pl.'s Mem. Opp. to Defs.' Mot. Dismiss at 21, ECF No. 49.) But, Item 303 requires "actual

10

knowledge" of an existing trend and its future material impact on the company, *see SAIC*, 818 F.3d at 95. In other words, allegations that Defendants "should have known" will not suffice. *Id.* And, in any event, "[i]t is only with hindsight that Plaintiff[] can allege that [Defendants] failed to discuss the possibility that a few dozen cases of a respiratory illness would explode into a ruinous pandemic."[6] *Wandel*, 2022 WL 76895, at *7. Also, Plaintiff presses that the FAC pleads the requisite knowledge by Defendants because "[p]ublicly available information may provide relevant circumstantial evidence of actual knowledge." (Pl.'s Mem. at 22 (quoting *Fed. Hous. Fin. Agency for Fed. Nat'l Mortg. Ass'n v. Nomura Holding Am., Inc.*, 873 F.3d 85, 122 (2d Cir. 2017).) True. But, Plaintiff's allegations at most suggest that Defendants knew COVID-19 existed, not that it would persist and spread globally, thereby having a negative impact on its operations and revenues. And, Plaintiff failed to allege how the existence of COVID-19 was "information uniquely within Defendants' control." *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 255 (S.D.N.Y. 2019).

Plaintiff's arguments concerning Item 105 fail for similar reasons. (Pl.'s Opp'n at 22–23.) Item 105 requires disclosure of "the *most significant factors* that make the offering speculative or risky[,]", and an explanation of "how the risk affects the company and/or the securities being offered." *Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 18-cv-9848, 2020 WL 5757628, at *7 (S.D.N.Y. Sept. 27, 2020) (citing 17 C.F.R. § 229.503(c)). While Plaintiff is correct that Item 105 does not require a plaintiff to plead actual knowledge, *see id.* at *10, it does require the presence of a significant risk. "Events that are not 'reasonably likely to be material under Item 303' are not among the 'most significant factors' rendering an offering speculative or

---

[6] Plaintiff argues that failure to disclose future impacts of foreign governmental policies violates Item 303 but provides no legal authority establishing its application under these circumstances. And, in any event, Plaintiff fails to establish Defendants knew of any future impact of China's COVID-19 preventative measures on its business.

11

risky under Item 105." *In re Proshares Tr. II Secs. Litig.*, 2020 WL 71007, at *9. Because COVID-19 was not a material event at the time of the IPO, Item 105 did not require its disclosure.[7]

In short, "the risk of COVID-19 was neither known nor knowable," and therefore, Plaintiff has failed to establish that the Registration Statement ran afoul of Items 303 and 105. *Wandel*, 2022 WL 768975, at *7, *11 (dismissing Section 11 claim premised on omissions in January 17, 2020 Registration Statement relating to COVID-19); *see also Berg v. Velocity Fin., Inc.,* No. 20-cv-6780, 2021 WL 268250, at *10 (C.D. Cal. Jan. 25, 2021) (same).[8]

In a last-ditch effort to salvage his claim, Plaintiff maintains that, irrespective of Item 303 and Item 105's requirements, the Registration Statement's generic *force majeure* disclosure created a duty to disclose because it was otherwise misleading in light of the "then-ongoing Covid epidemic." (Pl's Mem. at 10–11, 15.) Specifically, Plaintiff argues that despite "the Chinese central government and Chinese national media . . . widely reporting for weeks the Covid health crisis in China [was] an 'epidemic[,]'" the Registration Statement's "generic risk disclosure" was "vague and misleading." (*Id.* at 11–12.) To make this argument, Plaintiff

---

[7] Plaintiff relies upon inapposite and unhelpful caselaw to support his argument. For example, *City of Roseville Employees' Retirement System. v. EnergySolutions, Inc.*, is inapposite because it involved allegations that the defendants withheld known material information and made material misstatements. *See* 814 F. Supp. 2d 395, 426–27 (S.D.N.Y. 2011) (holding that "claims sound[ing] in misrepresentation under Rule 10b-5" establish violations of Item 105). *Construction Laborers Pension Trust for Southern California v. CBS Corp.*, also relied upon by Plaintiff, does not address an Item 105 violation at all. *See generally* 433 F. Supp. 3d 515 (S.D.N.Y. 2020). And, in *Oklahoma Law Enforcement Retirement System v. Papa John's International, Inc.*, the court rejected plaintiff's 105 argument, noting that an "increase in a risk does not mean the risk has already come to pass, such that a disclosure that simply identifies the risk would be misleading." 444 F. Supp. 550, 562–63 (S.D.N.Y. 2020). These cases do not alter the Court's conclusion.

[8] Plaintiff attempts to distinguish *Berg v. Velocity Financial, Inc.* by arguing that it involved a "U.S. mortgage company" that "had no exposure to China." (Pl.'s Mem. at 13.) The court in *Berg* determined that "[p]laintiff does not allege that Defendants would or could have known the extent of the coronavirus pandemic, or even the presence of the disease in America, at the time of the IPO." No. 20-cv-6780, 2021 WL 268250 at *10 (C.D. Cal. Jan. 25, 2021). So too here. While it is true that Lizhi is located in China, Plaintiff pleads no other facts from which the Court can infer that Defendants knew or could have known the extent of COVID-19 or the risk to Lizhi.

12

essentially relies on its conclusory allegations that COVID-19 had an impact on Lizhi, that Defendants knew it would continue to have those impacts, and implicitly asks the Court to otherwise infer Defendants' knowledge of the severity of COVID-19 based solely on its location. (*Id.* at 10–11.)  The Court declines to do so, particularly because Lizhi was located 600 miles away from Wuhan.  While the FAC alleges Lizhi had a subsidiary in Wuhan, it says nothing about the material impact on that subsidiary, or whether any purported impact was sufficiently material to Lizhi to necessitate disclosure.  Put another way, the FAC lacks any allegations from which the Court can infer that at the time of the IPO, Defendants knew "the risks [were] significantly greater or more certain than those portrayed" in the Registration Statement.  *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. 2d 487, 516 (S.D.N.Y. 2013); *see Panther Partners*, 538 F. Supp. 2d at 673 (dismissing Section 11 claim where complaint contained no plausibly pleaded fact suggesting the issuer "knew or should have known of the scope or magnitude" risk in its early stages).[9]

Plaintiff's argument that Defendants admitted that COVID-19 negatively impacted its business at the time of the IPO through its March and April 2020 disclosures reads too much into the disclosures.  While it is true that the April 2020 disclosure stated that Lizhi "has taken various preventative measures and quarantine measures across the Company *soon* after the outbreak" (Pl's Opp'n  at 16 (emphasis added)), the Court cannot infer, without more, that Lizhi

---

[9] Plaintiff's cases on this point are not to the contrary because in each one, the defendants knew of a material risk that they failed to disclose.  *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846, 2020 WL 1950783, at *10 (E.D.N.Y. Apr. 22, 2020) (registration statement's inclusion of statements advising of increased cost efficiency was misleading because it failed to disclose currently occurring shipping delays that were "doing the opposite"); *In re Salix Pharms. Ltd.*, No. 14-cv-8925, 2016 WL 1629341, at **2, 10–11 (S.D.N.Y. Apr. 22, 2016) (failure to disclose true inventory levels and previous inventory manipulation made revenue projections misleading); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.* 422 F. Supp. 3d 821, 842 (S.D.N.Y. 2019) (failure to discuss then-known seasonality of European market and its impact on revenue made registration statement misleading); *Yi Xiang v. Inovalon Holdings,* 254 F. Supp. 3d 635, 643–44 (S.D.N.Y. 2017) (defendant failed to disclose the potential impacts of a change in New York's tax laws that already occurred).

took such measures prior to the IPO. In other words, as with Plaintiff's other arguments, Plaintiff fails to plead any facts to support his conclusion that "soon" means a date between December 31, 2019 (the date on which China first reported COVID-19) and January 17, 2020 (the date of the IPO), versus between January 17, 2020 and January 30, 2020, or between February 2, 2020 and February 27, 2020. Any of these dates could be considered "soon" after the outbreak. *See Finger v. Pearson PLC*, No. 17-cv-1422, 2019 WL 10632904, at *10 (S.D.N.Y. Sept. 16, 2019) (rejecting conclusory allegations in support of Section 11 claim).

Because the FAC fails to plausibly allege that COVID-19 was a known trend or uncertainty for Lizhi necessitating a disclosure pursuant to Securities Regulations, and because Lizhi's disclosure regarding epidemics was not misleading without disclosure concerning COVID-19 specifically, Plaintiff failed to plead a violation of Section 11.[10]

## II.    Section 15 of the Securities Act

To plead a Section 15 violation, Plaintiff must allege (1) an underlying primary violation of the Securities Act, (ii) control by the defendant, and (iii) "particularized facts as to the controlling person's culpable participation in the fraud perpetrated by the controlled person." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 2d 341, 368 (S.D.N.Y. 2012) Because Plaintiff failed to plead a Section 11 violation, Plaintiff likewise failed to plead a violation of Section 15. *See DeMaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 170 (2d Cir. 2003) ("Because plaintiffs have failed to state an underlying

---

[10] Because Plaintiff has failed to sufficiently allege an omission violative of Section 11, his Section 12(a)(2) claim must be dismissed as well. *See In re Morgan Stanley Info. Fund Secs. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) ("Claims under sections 11 and 12(a)(2) are therefore Securities Act siblings with roughly parallel elements[]"). That is, because Plaintiff fails to allege that any of Lizhi's offering documents "omitted to state a material fact necessary to make the statements, in light of the circumstances under which they were made, not misleading[,]" *id.*, the Section 12(a)(2) claim fails.

14

violation under Section 12(a)(1) and Section 11, their claim under Section 15 must fail as well and is dismissed.").[11]  Therefore, Plaintiff's Section 15 claim must be dismissed.

## CONCLUSION

Defendants' motion to dismiss the FAC in its entirety for failure to state a claim is GRANTED.  Plaintiff's request to amend the amended complaint is DENIED with leave to renew.

SO ORDERED.

Dated:  Brooklyn, New York          /s/ LDH
       September 30, 2022          LaSHANN DeARCY HALL
                                          United States District Judge

---

[11] In his opposition, Plaintiff requests that the Court grant leave to amend the FAC.  (Pl.'s Opp'n at 25.)  This is not the proper manner in which to make such a request, and therefore that request is denied.  If Plaintiff wishes to seek leave to amend, he must do so by filing a motion pursuant to Rule 15 of the Federal Rules of Civil Procedure.  However, the Court is skeptical that Plaintiff could overcome the deficiencies identified in this memorandum and order by filing an amended complaint.